**Chester W. SETSER**

v.

**NOVACK INVESTMENT CO., d/b/a Budig Western Trucking and Alvin S. Novack.**

**No. 77–489C(1).**

United States District Court, E. D. Missouri, E. D.

Jan. 7, 1980.

Michael J. Hoare, Chackes & Hoare, St. Louis, Mo., for plaintiff.

Charles A. Seigel, Stein & Seigel, St. Louis, Mo., for defendants.

## MEMORANDUM

WANGELIN, Chief Judge.

The above entitled action is brought pursuant to 42 U.S.C. § 1981 wherein plaintiff, a white male, alleges that defendants denied him employment as an over-the-road truck driver in October of 1973 and November of 1973 on account of his race and because he protested the denial of employment as unlawful discrimination. The matter is presently before the court for a decision on the merits following a bench trial.

After consideration of the testimony adduced at trial, the exhibits introduced into evidence, the briefs of the parties and the applicable law, the Court hereby makes and enters the following findings of fact and conclusions of law. Any finding of fact equally applicable as a conclusion of law is hereby adopted as such and, conversely, any conclusion of law applicable as a finding of fact is adopted as such.

### Findings of Fact

1. Plaintiff Chester W. Setser, a white male has been a professional over-the-road driver and a member of the Teamsters Union since 1960. Plaintiff was initially employed by defendant Western Trucking Company for a six month period in the latter half of 1968.

2. Defendant Novack Investment Company is a Missouri corporation organized in December, 1947, which at the time of its organization operated under the name of Western Trucking Company. Defendant Alvin S. Novack was the chief operating officer of Western. Western Trucking Company was engaged in the business of a common carrier, pursuant to authority granted from the Interstate Commerce Commission and having an over-the-road operation and a city delivery and pickup operation in the City of St. Louis, Missouri. Said corporation continued in such business until August 2, 1976, when it sold to Budig Western Trucking Company its operating rights and its motor vehicle rolling stock. Since August 2, 1976, Western Trucking Company has not engaged in the trucking business and has not had any business reason to hire any city truck driver or any over-the-road truck driver.

3. As set forth in finding 1, *supra*, plaintiff was initially employed by defendant in 1968. During such employment defendant found plaintiff to be an unsatisfactory employee for the reasons that it had been difficult to get in touch with plaintiff to notify him of his work assignments, on occasion plaintiff failed to report to work as

assigned, and once left a loaded tractor-trailer in St. Louis overnight.

4. The expeditious transport of outbound freight requires over-the-road drivers to be available to receive work assignments when called. When an over-the-road driver could not be reached to transport a particular shipment, the company was required to call other regular over-the-road drivers in accordance with their seniority in the presence of a union member. Thus, those instances where a driver could not be reached or would call in and "book-off" at the last minute caused the defendant company great inconvenience.

5. In January and February of 1972 and in September and October of 1973, plaintiff was used occasionally by defendant company as a casual driver. Despite their previous experience with the plaintiff, defendant was still willing to take the risk with plaintiff for casual work for the reason that if a casual driver did not show up for a scheduled run all the company had to do was call any other casual driver irrespective of their seniority, and the calls did not have to be made with a union steward present.

6. Defendant corporation did not allow plaintiff to work sufficient days as a casual driver to obtain seniority according to the union contract, for the reason that plaintiff was not considered by the company to be a satisfactory regular employee.

7. During the period of time that plaintiff worked as a casual driver, defendant hired two full-time employees, both white males, as drivers.

8. The company would not, under any circumstances, have hired plaintiff as a regular employee due to the difficulties it had had with plaintiff through the years.

9. Plaintiff applied to defendants for employment in October, 1973, but did not apply for a position as a regular over-the-road driver. In this regard, the Court finds probative the fact that plaintiff was not sent to the Motor Carrier's Council of St. Louis for a screening test as was the procedure with all applicants that defendant company deemed to be suitable, prospective,

regular employees. Defendant would not have hired plaintiff for such position due to its prior experiences with plaintiff.

10. In October of 1973 defendants did not refuse to hire plaintiff on account of his race.

11. Plaintiff was not told in October, 1973 that defendant could not hire him because the company had to hire black employees, nor was he told that he would be hired after the three black drivers who were transferring into over-the-road positions.

12. In November, 1973 plaintiff was not refused employment on account of plaintiff's charge to the Equal Employment Opportunity Commission alleging racial discrimination nor did plaintiff reapply for a position as a regular over-the-road driver with defendant company. Furthermore, plaintiff did not even call in to the company for casual work subsequent to November, 1973. This fact is somewhat incredible in light of plaintiff's amended November 9, 1976 E.E.O.C. charge.

13. In October, 1973, at the time of plaintiff's application, there were no over-the-road driving positions available. Defendant company had previously promised three black individuals who had requested to be transferred from the city seniority roster to over-the-road positions that they would be transferred to over-the-road positions as they became available.

14. When those three individuals decided to return to the city board, the company subsequently hired, between November 9, 1973 and March 6, 1974, five white individuals as over-the-road drivers. The additional positions became available due to an increased work load.

15. A substantial amount of defendants' revenue was from government business. With respect to companies that were doing government business there was in effect at all times relevant herein Presidential Executive Order No. 11246. The Executive Order in no way required defendant company to have any quotas or to hire persons that were not qualified or to prefer any minori-

ties over more qualified whites, but it did require preference to be given to equally qualified blacks in new hiring, promotions or transfers from within. Defendant company was contacted on numerous occasions by government contract compliance examiners who repeatedly told defendant that it was not in compliance and that penalties, including loss of all government business and prohibiting any other company that was engaged in government business from doing any business with defendant, could be imposed. Said examiners specifically told defendant that it must obtain blacks in its over-the-road driver category. In addition they specifically instructed defendant that equally qualified blacks were to be preferred over whites.

16. With respect to defendant Alvin S. Novack the Court finds that said defendant did not harbor any ill will or malice towards plaintiff, did not refuse to hire plaintiff on account of his race, and at all times herein pertinent acted as an agent of Western Trucking Company and Novack Investment Company in good faith towards plaintiff.

17. At no time did defendant corporations harbor any ill will or malice towards plaintiff nor did defendant corporations refuse to hire plaintiff on account of his race. At all times pertinent defendant corporations acted in good faith towards plaintiff.

### Conclusions of Law

This Court has jurisdiction over the parties herein and has subject matter jurisdiction pursuant to 28 U.S.C. § 1343. Neither defendant Western Trucking Company, defendant Novack Investment Company nor defendant Alvin S. Novack discriminated against plaintiff on account of his race. Furthermore, neither defendant Western Trucking Company, defendant Novack Investment Company nor defendant Alvin S. Novack failed to hire plaintiff in retaliation for the charge he had filed with the Equal Employment Opportunity Commission. Plaintiff's claim concerning the charge and the alleged retaliation is but one instance of the connivance and misstatement which

make his own testimony incredible and unworthy of belief. Having found no acts of discrimination or retaliation on the part of defendants the Court will direct entry of judgment in favor of defendants on plaintiff's complaint.